UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MCFARLAND,

      Plaintiff,

v.

SPECIAL-LITE, INC.,

      Defendant.
_____/

Case No. 1:09-CV-704

HON. GORDON J. QUIST

## OPINION

Plaintiff, Sean McFarland ("McFarland"), filed this action against his former employer, Defendant Special-Lite, Inc. ("Special-Lite"), alleging that his termination violated Michigan's Whistleblowers' Protection Act ("WPA"), M.C.L. § 15.361, *et seq.* (Count I), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Count II). Special-Lite has moved for summary judgment on McFarland's claims. After careful consideration, the Court concludes that the parties' briefs adequately address the issues and that oral argument is unnecessary. For the following reasons, the Court will grant in part and deny in part Special-Lite's motion.

**Background**

In 2004, McFarland started working at Special-Lite, a company that manufactures heavy-duty doors for commercial buildings. Two years later, McFarland was involved in a workplace accident. Pursuant to company policy for individuals involved in a workplace accident, McFarland submitted to a drug / alcohol test. McFarland tested positive for marijuana, and on June 9, 2006, Special-Lite took corrective action, including McFarland's enrollment in a substance abuse treatment program, submission to random drug / alcohol testing, and prohibition from driving any company vehicle until McFarland successfully completed the substance abuse program. (Corrective

Action Plan, Def.'s Ex. D at 1.) Special-Lite also warned McFarland that testing positive for drugs a second time or refusing to submit to a test would result in his immediate termination. (*Id.*)

In October 2008, McFarland and another employee, John Hemenway, were traveling in a Special-Lite vehicle to repair doors in Arizona and Texas. On October 7, 2008, Hemenway was driving the vehicle in Kansas when he was pulled over by the police. The police issued a citation for incomplete log books and McFarland's lack of a medical card, grounded the truck for twenty-four hours, and required McFarland to obtain a medical card before continuing the journey. The next day, McFarland drove the vehicle to the next town to obtain a medical card.[1]

In late October 2008, shortly after McFarland returned from the trip, McFarland and another employee, Scott Wright, went to the Michigan State Police station in Paw Paw to ask questions about driving and weight restrictions, weigh stations, and other motor carrier regulations. McFarland did not file any complaint with the police at that time, nor did McFarland tell the officer that he planned on filing a complaint. (McFarland Dep., Def.'s Ex. E at 78.) When McFarland returned to work, he told his supervisor, Craig Hartsell ("Hartsell"), and Special-Lite's safety manager, Stacey Hollenbeck, about his visit to the police, and he gave the police officer's card to Ms. Hollenbeck. (*Id.* at 79.) Ms. Hollenbeck then told Special-Lite's director of human resources, David Glynn ("Glynn"), about McFarland's visit to the state police. (Glynn Dep., Pl.'s Ex. 6 at 101.) In November 2008, Special-Lite held a training session for all employees involved in transportation. (McFarland Dep., at 79-80.)

On January 19, 2009, McFarland was selected for a random drug test. McFarland was unable to produce enough urine to test; thus, the clinic performed a hair follicle test. The next day,

---

[1] The parties dispute the sequencing of this event. McFarland claims that Special-Lite's director of human resources, David Glynn, told him to drive to the next town to obtain his medical card, even though the police ordered the truck grounded for twenty-four hours. Special-Lite maintains that McFarland started driving on his own, then called David Glynn to tell him about the police officer's orders, at which time David Glynn instructed McFarland to stop at the next town to obtain a medical card.

2

McFarland spoke with Hartsell and expressed his concern that the test "might" be positive. (Letter of Termination, Pl.'s Ex. 20 at 1.) Hartsell reported McFarland's comments to Glynn the same day. On January 21, 2009, McFarland's drug test came back negative. (Omega Lab. Hair 5 Drug Panel Test Results, Pl.'s Ex. 19 at 1.) Two days later, Special-Lite terminated McFarland's employment based on his admissions of drug use. In the letter of termination, Glynn wrote that "the company takes the position that your voluntary admission, [sic] to Mr. Hartsell is equivalent to a second positive test, regardless of the actual outcome of the test." (Letter of Termination, at 1.) After his termination, McFarland filed a complaint against Glynn and Special-Lite with the Occupational Safety and Health Administration.

**Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

**Count I: Michigan's Whistleblowers' Protection Act**

"To establish a prima facie violation of the WPA, a plaintiff must show (1) that the plaintiff was engaged in a protected activity as defined by the WPA, (2) that the plaintiff was discharged, and (3) a causal connection existed between the protected activity and the discharge." *Henry v. City of*

*Detroit*, 234 Mich. App. 405, 409, 594 N.W. 2d 107, 110 (1999). Special-Lite only addresses the third element, arguing that McFarland's termination was not causally connected to his protected activity.[2]

In Michigan, "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West v. Gen. Motors Corp.*, 469 Mich. 177, 186, 665 N.W. 2d 468, 473 (2003) (citation omitted). Here, McFarland claims that he reported Special-Lite's violations to the Kansas police during the traffic stop, he visited the Michigan State Police when he returned from that trip, he was terminated three months later, and that the temporal proximity between these events is strong evidence of retaliation. However, Michigan case law requires more than a temporal connection to show causation. *See id.* n.12 (stating that reliance "merely on a temporal relationship is a form of engaging in 'the logical fallacy of post hoc ergo propter hoc (after this, therefore in consequence of this)' reasoning." (citation omitted)). McFarland failed to cite any evidence that his termination was because of his protected conduct. Moreover, McFarland's own testimony suggests that Special-Lite responded to his safety concerns within a month of his visit to the state police by hosting a training session in November 2008 for all employees involved in transportation. (McFarland Dep., at 79-80.) Therefore, the Court will grant Special-Lite's motion for summary judgment on McFarland's Whistleblowers' Protection Act claim because McFarland failed to show a causal connection.

### Count II: Americans with Disabilities Act

The ADA prohibits employers from discriminating against qualified individuals with disabilities in regard to "the hiring, advancement, or discharge of employees," or other terms,

---

[2] In its reply brief, Special-Lite also argues that McFarland was not engaged in protected activity because McFarland admitted that he did not report nor was he about to report Special-Lite's alleged violations. This issue is not properly before the Court because Special-Lite raised the argument for the first time in its reply brief, foreclosing McFarland's opportunity to respond. *See ABC Bev. Corp. & Subsidiaries v. United States*, 577 F. Supp. 2d 935, 950 n.16 (W.D. Mich. 2008); *see also Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 682-83 (E.D. Mich. 2002) (stating that "it is not the office of a reply brief to raise issues for the first time." (citation omitted)).

conditions, and privileges of employment. 42 U.S.C. § 12112(a). "[A]n ADA claim seeking to establish discrimination by indirect evidence is analyzed according to the *McDonnell Douglas* burden-shifting framework." *Scott v. FirstMerit Corp.*, 167 F. App'x 480, 487 (6th Cir. 2006) (citing *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999)) (emphasis in original). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that "(1) she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation[,] and (3) who was discriminated against solely because of the disability." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (citation omitted).

Special-Lite first argues that McFarland is not a "qualified individual with a disability" because of his drug use at the time of his termination. The ADA provides that "'a qualified individual with a disability' shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a). Whether McFarland was using drugs at the time of his termination is a material issue of fact to be resolved at trial. Special-Lite maintains that McFarland admitted to drug use by telling coworkers and his supervisor that his January 19, 2009, drug test "might" be positive. (Letter of Termination, at 1; Tim Polomczak Dep., Def.'s Ex. I, at 15.) In an affidavit, McFarland states, "I never told anyone that I would test positive. I did not tell anybody at work that I had used marijuana." (McFarland Aff. ¶ 6.) Moreover, McFarland's January 19, 2009, drug test was negative. (Omega Test Results, at 1.) Therefore, the Court finds that an issue of fact remains regarding whether McFarland was engaged in illegal drug use at the time of his termination.

Second, Special-Lite argues that even if McFarland establishes a prima facie case, Special-Lite's proffered reason for McFarland's termination, McFarland's admission to Hartsell, was not pretextual. Special-Lite claims that the honest belief doctrine precludes liability because Special-

5

Lite reasonably relied on McFarland's statement to his supervisor regarding his drug use to terminate him. In determining the applicability of the honest belief doctrine, "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action. . . . the employer must be able to establish its reliance on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp*., 155 F.3d 799, 807 (6th Cir. 1998). At the time of McFarland's termination, Special-Lite knew the following facts: (1) McFarland told his supervisor that he "might" test positive on the drug test; and (2) McFarland's drug test was negative. The Court finds that an issue of fact remains regarding whether Special-Lite's justification was pretextual because McFarland did not affirmatively admit to drug use and Special-Lite knew McFarland's test results. Therefore, the Court will deny Special-Lite's motion for summary judgment on McFarland's ADA claim.

## Conclusion

For the foregoing reasons, the Court will grant Special-Lite's motion for summary judgment on McFarland's Whistleblowers' Protection Act claim and deny Special-Lite's motion on McFarland's Americans with Disabilities Act claim.

An Order consistent with this Opinion will be entered.


Dated: August 17, 2010  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE